**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-30375

(Summary Calendar)
_____

ROBIN GASSIE; MICHAEL BUCCIERO, JR.;
UNIDENTIFIED PARTIES,

                              Plaintiffs-Appellants,

versus

SMH SWISS CORPORATION FOR MICROELECTRIC AND
WATCHMAKING INDUSTRIES LIMITED, ET AL.,

                              Defendants,

SMH US, incorrectly sued as SMH US INC., SMH
SOCIETE SUISSE DE MICROELECTRONICS ET
HOROLOGERIE SA, incorrectly sued as SMH Swiss
Corporation for Microelectric and Watchmaking
Industries, Limited,

                              Defendants-Appellees.


Appeal from the United States District Court
for the Eastern District of Louisiana
(97-CV-3557-G)


November 24, 1998

Before EMILIO M. GARZA, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    Robin Gassie and Michael Bucciero, Jr., appeal the denial of

---

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

their motion to remand for lack of subject matter jurisdiction and the dismissal of their claims. We remand for further factual development on subject matter jurisdiction.

I

Gassie and Bucciero filed a class action in state court against SMH Swiss Corporation for Microelectronic and Watchmaking Industries, Ltd., and SMH (U.S.) Inc. ("SMH"), the manufacturers and sellers of Swatch watches. They asserted fraud, negligent misrepresentation, negligence/products liability, breach of warranties, punitive damages and battery based on the allegation that the leaching of tritium, a radioactive isotope,[1] from Swatches worn by them had caused "cell disruption."

SMH removed this suit to federal court based on the Price-Anderson Act, 42 U.S.C. § 2210(n)(2) (1995), and preemption. Gassie and Bucciero moved to remand. The district court denied the request, concluding that the Price-Anderson Act established subject matter jurisdiction.[2]

---

[1]   Tritium is "a radioactive isotope of hydrogen with atoms of three times the mass of ordinary light hydrogen atoms." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1265 (1994).

[2]   In denying the motion to remand, the district court made the following observation:

> Although Defendants attempt to present two arguments for removal, namely the Price-Anderson Act and complete preemption based on pervasive federal regulations of tritium, the federal regulations Defendants rely upon are merely a supplement to the Price-Anderson Act. If the Price-Anderson Act does not provide federal jurisdiction in this case, the federal regulations promulgated under it will not provide federal jurisdiction either. Therefore, Defendants' argument for removal jurisdiction depends upon whether the Price-Anderson Act applies in this case.

In its brief, SMH agreed with this discussion, calling it "correct[]."

-2-

SMH moved to dismiss all claims. The district court granted this request as to the products liability/negligence, breach of warranties, punitive damages and battery claims. Finding the fraud and negligent misrepresentation claims insufficient to satisfy the pleading requirement set forth in Federal Rule of Civil Procedure 9(b), it gave Gassie and Bucciero ten days to amend their complaint to cure this shortcoming. When Gassie and Bucciero failed to file an amended complaint, it dismissed the outstanding claims and entered judgment for SMH. Gassie and Bucciero timely appealed.

II

We address the question of subject matter jurisdiction before considering the appeal's merits. *See Marathon Oil Co. v. Ruhrgas,* 145 F.3d 211, 216-17 (5th Cir. 1998) (en banc). SMH, as the removing party, bears the burden of establishing subject matter jurisdiction. *See Frank v. Bear Stearns & Co.,* 128 F.3d 919, 921-22 (5th Cir. 1997) (considering whether or not removal jurisdiction exists). It maintains that the Price-Anderson Act accords subject matter jurisdiction. The Act states the following:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court where the nuclear incident takes place, or in the case of a nuclear incident taking place outside the United States, the United States District Court for the District of Columbia, shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant or of the [Nuclear Regulatory] Commission ["Commission" or "NRC"], or the Secretary [of Energy], as appropriate, any such action pending in any State court (including any such action pending on August 20, 1988) or United States district court shall be removed or transferred to the United States district court having venue under this subsection.

42 U.S.C. § 2210(n)(2) (1995). Through a series of interlocking propositions, SMH endeavors to establish this case as falling within this provision ("§ 2210(n)(2)"). A public liability action, which § 2210(n)(2) concerns, is "any suit asserting public liability"))that is, "any legal liability arising out of or resulting from a nuclear incident." *Id.* §§ 2014(w), (hh). A nuclear incident, in turn, is "any occurrence, including an extraordinary occurrence, within the United States causing, within or outside of the United States, bodily injury, sickness, diseases, or death . . . arising out of or resulting from the radioactive, toxic, explosive or other hazardous properties of source, special nuclear, or byproduct material."[3] *Id.* § 2014(q). Tritium, the material at issue, is a byproduct material because NRC regulations "specifically designate" it as one and "extensively regulate its use in watches and other timepieces."[4] *See* 10 C.F.R. pts. 30, 32 (1998).[5] This logic, SMH says, places this case within § 2210(n)(2)'s confines.

---

[3] Source material is "(1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 2091 of this title to be source material; or (2) ores containing one or more of the foregoing materials, in such concentration as the Commission may by regulation determine from time to time." 42 U.S.C. § 2014(z). Special nuclear material is "(1) plutonium, uranium enriched in the isotope 233 or in the isotope 235, and any other material which the Commission, pursuant to the provisions of section 2071 of this title, determines to be special nuclear material, but does not include source material; or (2) any material artificially enriched by any of the foregoing, but does not include source material." *Id.* § 2014(aa). The definition of byproduct material appears *infra*.

[4] SMH maintained below that tritium, by virtue of being a radioactive material, comes within § 2210(n)(2). The district court agreed.

[5] Parts 30 and 32 regard the domestic licensing of byproduct material. Tritium is mentioned in the following sections of those parts: 30.15, 30.19, 30.55, 32.14-.15, 32.22, 32.40, 32.53-.56, 32.71 and 32.101. *See* 10 C.F.R. pts. 30, 32 (1998).

We find SMH's argument persuasive until the final step, which draws a link between byproduct material and tritium.[6]  A byproduct material is "(1) any radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation incident to the process of producing or utilizing special nuclear material, and (2) the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content."[7]  42 U.S.C. § 2014(e) (1995).  The NRC regulations to which SMH points adopt the first part of this definition.  *See* 10 C.F.R. § 30.4 (1998).  They also frequently discuss tritium, *see id.* pts. 30, 32; indeed, in one instance, tritium and byproduct material are mentioned in the same breath, *see id.* § 30.15.  The regulations, however, fail to indicate whether they concern all tritium or just tritium that is byproduct material.  *See* 1 STENSVAAG, *supra* §§ 4.17 n.12, 4.19 ("Accelerator-produced radionuclides are not byproduct materials because they do not result from the utilization of special nuclear materials or the processing of source materials.") ("the . . . definition [of byproduct material] technically includes only material yielded or made radioactive by certain processes").  This silence raises the following questions:

(1) Is all tritium byproduct material?

---

[6]     Whether or not tritium is a byproduct material is a question of fact.

[7]     "Unlike the definitions of source and special nuclear materials, the . . . definition of byproduct material does not expressly confer power on an administrative agency to expand on the statutory definition."  1 JOHN-MARK STENSVAAG, HAZARDOUS WASTE LAW § 4.17 (1993).

(2) If not, is tritium used by SMH byproduct material?

The present record provides no answers to these queries. It does not include evidence that either tritium generally or tritium used by SMH is "radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation incident to the process of producing or utilizing special nuclear material." Because of this, we conclude that this case should be remanded to the district court to develop facts sufficient to resolve whether or not all tritium is byproduct material and, if not, whether or not the tritium used by SMH is byproduct material.[8] *See United States ex rel. Miss. Rd. Supply Co. v. H. R. Morgan, Inc.,* 528 F.2d 986, 986-87 (5th Cir. 1976) (per curiam) (remanding for development of facts critical to resolving subject matter jurisdiction); *cf. Marathon Oil,* 145 F.3d at 225 ("Because of the novelty of some of the subject-matter jurisdiction claims, and because our court has been understandably pre-occupied in reconciling the confused state of our precedent concerning a district court's obligations, we remand the issue of whether there exists federal subject-matter jurisdiction to the able district court for its determination in the first instance.").

IV

We REMAND this case for further factual development on the issue of subject matter jurisdiction. After the district court acquires sufficient facts, it should reconsider whether or not it

---

[8]     We expect that the information needed to answer the questions can be ascertained without much discovery. For example, testimony by a knowledgeable member of the NRC's staff might be enough.

possesses subject matter jurisdiction.